1

2

3

4

5          UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
6                        AT TACOMA

7   MICHAEL ROGERS, RONALD
    ACKERSON, and DAMIEN RIVERA, on          **CLASS ACTION**
8   behalf of themselves and all others similarly
    situated,                                No.
9
                              Plaintiffs,     **CLASS ACTION COMPLAINT FOR
10          vs.                               INJUNCTIVE AND DECLARATORY
                                              RELIEF**
11  DEPARTMENT OF CHILDREN, YOUTH
    and FAMILIES (DCYF); ROSS HUNTER,
12  Secretary of DCYF, in his official capacity;
    JODY BAKER, Deputy Secretary of DCYF
13  Programs for Children and Families;
    REBECCA KELLY, Interim Secretary of
14  DCYF Juvenile Rehabilitation;
    MARYBETH QUERAL, Assistant
15  Secretary of DCYF Juvenile Rehabilitation;
    HARVEY PEREZ, Director of DCYF
16  Institution Programs of Juvenile
    Rehabilitation; JENNIFER REDMAN,
17  Superintendent of DCYF's Green Hill
    School; BENNY SWENSON; ANTHONY
18  HARPER; WILLIAM DOLLARHYDE;
    OSWALDO ROSERO; MICHAEL SMITH;
19  JANE and JOHN DOES 1-25, DCYF
    administrators and staff, in their personal,
20  individual, and official capacities,

21                            Defendants.

22
                    **I.       PRELIMINARY STATEMENT**
23
        1.1     This class-action civil rights lawsuit challenges the Department of Children,

COMPLAINT FOR INJ. & DECL. RELIEF –          COLUMBIA LEGAL SERVICES
Page 1                                        101 Yesler Way, Suite 300
                                              Seattle, WA  98104
                                              (206) 464-0838; (206) 382-3386 (fax)

Youth, and Families' ("DCYF") pervasive policy and practice of holding youth in its custody in handcuffs, in solitary cells, for hours on end in order to force their compliance with staff directives.

1.2     It is accepted practice for DCYF staff at Green Hill School to immediately restrain youth in metal handcuffs and isolate them when they verbally refuse to comply with a staff directive, regardless of what other tools are available to staff to encourage compliance.

1.3     The named Plaintiffs are youth in DCYF custody. All of them have been handcuffed and held in solitary confinement for hours on end, on multiple occasions, as punishment for verbally refusing to comply with staff directives.

1.4     Plaintiffs believe that DCYF staff have treated other youth in similar inhumane ways in the recent past.

1.5     In light of these facts, potentially every youth held in DCYF custody is in danger of being handcuffed and held in a solitary cell in order to coerce their compliance with a staff member's demand or to punish their noncompliance.

1.6     These widespread practices appear to violate relevant, written DCYF policies. Yet the Defendants who serve in supervisory and administrative roles have not enforced these policies, disciplined staff, or provided staff with appropriate training and directives to ensure their compliance with DCYF policies and their legal obligations after they became aware of the facts set out in this complaint.

1.7     The Defendants have failed to appropriately train and supervise DCYF staff and instead authorize, condone, or permit the indiscriminate use of metal restraints and solitary confinement in an attempt to coerce young people's compliance with staff directives and punish their noncompliance.

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838; (206) 382-3386 (fax)

1.8 The Defendants' actions have caused youth in their care physical, emotional, and psychological injuries.

1.9 The Defendants' actions have harmed and risk harming youth of color to a disproportionate degree, as youth of color are overrepresented in Juvenile Rehabilitation facilities as compared to the general population.

1.10 The Defendants' actions violate the Eighth and Fourteenth Amendments to the United States Constitution and Article I, sections 3 and 14 of the Washington Constitution, as well as Defendants' duty to keep youth in their care in health and safety. The Defendants will continue to violate the rights of youth in their care absent injunctive and declaratory relief as requested below.

1.11 Plaintiffs seek to certify a class of all youth held by DCYF in Juvenile Rehabilitation facilities and all youth who will be held there in the future, and ask the Court to grant declaratory and injunctive relief that will end DCYF's unlawful policies and practices on behalf of the proposed class.

1.12 Plaintiffs also seek compensatory and punitive damages against the Defendants for the harms they have individually suffered.

## II. PARTIES

### A. Named and Class Plaintiffs

2.1 Plaintiff Michael Rogers is a youth incarcerated at Green Hill School. He was 18 years old during the events described herein.

2.2 Plaintiff Ronald Ackerson is a youth incarcerated at Green Hill School. He was 17 years old during the events described herein.

2.3 Plaintiff Damien Rivera is a youth incarcerated at Green Hill School. He was 17

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA 98104
(206) 464-0838; (206) 382-3386 (fax)

years old during the events described herein.

2.4     Plaintiffs seek to represent a class of all people currently detained in any DCYF facility or who will be incarcerated in any DCYF facility in the future.

**B.     Defendants**

2.5     The Department of Children, Youth and Families (DCYF) operates Juvenile Rehabilitation (JR) facilities throughout Washington. DCYF operates three secure residential facilities: Echo Glen Children's Center, Naselle Youth Camp, and Green Hill School. In addition, it operates eight lower-security community facilities.

2.6     DCYF is sued for purposes of appropriate injunctive and declaratory relief.

2.7     Defendant Ross Hunter is the Secretary of the Department of Children, Youth and Families. He has held the position since 2017. As the head of DCYF he is responsible for the promulgation and enforcement of policies that protect the health, safety, and treatment of youth incarcerated at JR facilities, and for ensuring their safe and lawful operations.

2.8     Defendant Jody Becker is the Deputy Secretary of Programs for Children and Families. As Deputy Secretary, she is responsible for promulgating and approving changes to DCYF policies and oversight and supervision of DCYF staff and administrators.

2.9     Defendant Rebecca Kelly is the Interim Assistant Secretary of Juvenile Rehabilitation. As Interim Assistant Secretary, she is responsible for promulgating and approving changes to DCYF policies and oversight and supervision of DCYF staff and administrators.

2.10    Defendant Marybeth Queral was the Assistant Secretary of Juvenile Rehabilitation in 2019, when many of the events described herein took place. As Assistant Secretary, she was responsible for promulgating and approving changes to DCYF policies and

COMPLAINT FOR INJ. & DECL. RELIEF –
Page 4

1  oversight and supervision of DCYF staff and administrators.

2      2.11    Defendant Harvey Perez is the Director of Institution Programs of Juvenile

3  Rehabilitation. He oversees the care, custody, and treatment of youth committed to JR

4  institutions. He is responsible for promulgating and approving changes to DCYF policies and

5  oversight and supervision of DCYF staff and administrators.

6      2.12    Defendant Jennifer Redman is the Superintendent of Green Hill School and a

7  DCYF employee. She ensures the School's day-to-day operations and is responsible for the

8  health, safety, and treatment of youth incarcerated there. She is responsible for promulgating and

9  approving changes to Green Hill School policies and oversight and supervision of DCYF staff

10  and administrators.

11      2.13    Defendant Benny Swenson was a DCYF employee, employed as security staff at

12  Green Hill School and was involved in events described in this complaint.

13      2.14    Defendant Anthony Harper was a DCYF employee, employed as security staff at

14  Green Hill School and was involved in events described in this complaint.

15      2.15    Defendant William Dollarhyde was a DCYF employee, employed as security staff

16  at Green Hill School and was involved in events described in this complaint.

17      2.16    Defendant Oswaldo Rosero was a DCYF employee, employed as security staff at

18  Green Hill School and was involved in events described in this complaint.

19      2.17    Defendant Michael Smith was a DCYF employee, employed as security staff at

20  Green Hill School and was involved in events described in this complaint. He supervised other

21  security staff and was responsible for approving their use of restraints and isolation.

22      2.18    Jane and John Does 1 through 25 are other DCYF staff and administrators who

23  were involved in the events described in this complaint. Their identities are not yet known to

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838; (206) 382-3386 (fax)

Plaintiffs, but the Defendants possess that information and they will be identified during the pendency of this action.

2.19    All Defendants with the exception of Ross Hunter are named in their personal, individual, and official capacities.

2.20    Defendant Ross Hunter is sued solely in his official capacity.

2.21    As detailed below, Defendants have failed to properly train or supervise DCYF employees and failed to properly promulgate policies and standards to ensure the facility is operated in a constitutional manner.

2.22    All actions described herein were taken or continue to be taken by DCYF staff at the explicit direction of the other Defendants or with their knowledge and consent.

2.23    All actions described herein were undertaken under color of law and constitute state action for all purposes.

### III.    CLASS ALLEGATIONS

3.1    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2) and seeks declaratory and injunctive relief on behalf of a class of all people currently detained in any DCYF facility or who will be incarcerated in any DCYF facility in the future.

3.2    All class members face a substantial risk of serious harm as a result of DCYF's use of restraints and isolation.

3.3    The facts and claims meet the requirements of Fed. R. Civ. P. 23(a).

3.4    *Numerosity:* Joinder of all class members is impracticable because of the size of the class and the characteristics of the class members. At any given time, all of the people incarcerated in DCYF Juvenile Rehabilitation facilities are at significant risk of illegal use of restraints and isolation. Class members cycle regularly between and in and out of these

COMPLAINT FOR INJ. & DECL. RELIEF –
Page 6

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838; (206) 382-3386 (fax)

facilities. Many of them are unable to file lawsuits on their own because of their youth and lack of financial resources. In addition, the proposed class includes members who cannot be currently identified because they will be incarcerated in the future.

3.5     *Commonality*: There are questions of law and fact common to all members of the class, including but not limited to whether DCYF's policy and practice of restraining young people in metal handcuffs in isolation poses a substantial risk of serious harm to the class members and violates rights guaranteed them by the Eighth and Fourteenth Amendments to the United States Constitution and by Washington's Constitution and laws.

3.6     *Typicality*: As detailed herein, the claims of the named Plaintiffs are typical of those of the class.

3.7     *Adequacy of Representation*: The named Plaintiffs and class counsel will fairly and adequately represent the interests of the class. The named Plaintiffs have no interests in this matter that are antagonistic to other class members. Class counsel have many years of experience in civil rights and class action litigation.

3.8     Class-wide declaratory and injunctive relief are appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class as a whole.

## IV.     JURISDICTION AND VENUE

4.1     This action arises under the Constitution and laws of the United States and under the Constitution and laws of the State of Washington. This Court has jurisdiction to adjudicate these claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1334, 28 U.S.C. § 1367 and 42 U.S.C. § 1983.

4.2     This Court has authority to award compensatory and punitive damages pursuant

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838; (206) 382-3386 (fax)

to 42 U.S.C § 1983 and as provided pursuant to applicable state laws. This Court has authority to award costs and attorneys' fees under 42 U.S.C. § 1988.

4.3     Venue is proper in the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1391, because at least one of the named Defendants resides in this District and all Defendants are residents of Washington State, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## V.     FACTS

***Facts Relating To DCYF Facilities And Ongoing Threat To All Youth In Custody***

5.1     The Department of Children, Youth, and Families serves incarcerated children and young adults through its Juvenile Rehabilitation (JR) arm.

5.2     JR operates eleven facilities statewide to hold children and young adults committed to JR custody. Three facilities are secure residential facilities, and eight are community facilities or "group homes."

5.3     Located in Chehalis, Washington, Green Hill School is a medium/maximum security JR facility that houses male youth.

5.4     Located in Snoqualmie, Washington, Echo Glen Children's Center is a medium/maximum security JR facility that houses male and female youth.

5.5     Located in Naselle, Washington, Naselle Youth Camp is a medium security JR facility that houses male youth.

5.6     Generally applicable policies, procedures and practices apply to all DCYF staff at all facilities.

5.7     Youth are regularly transferred between the three secure residential facilities and between these facilities and the eight group homes that DCYF operates.

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838; (206) 382-3386 (fax)

1    5.8     Youth are regularly sent to Green Hill School and the other secure facilities from

2    group homes.

3    5.9     Because of the lack of appropriate oversight, supervision and policies, the

4    problems and failings set out below threaten all youth held at each of the three secure facilities

5    and may threaten youth held in every DCYF facility.

6    ***Facts Relating To Plaintiff Michael Rogers***

7    5.10    In September 2019 at Green Hill School, Officers Anthony Harper and Benny

8    Swenson strip searched Michael Rogers to search for contraband.

9    5.11    According to JR policy, youth must be strip searched in the presence of at least

10   two staff members, one to observe and one to conduct the search.

11   5.12    Officer Michael Smith, supervisor to Officers Harper and Swenson, approved the

12   strip search.

13   5.13    During a strip search at Green Hill School, young people are searched in the

14   bathroom. The youth removes articles of clothing one by one on command, beginning with

15   outer garments and finishing with undergarments. He passes them to one of the officers present,

16   who inspects them for contraband.

17   5.14    The two officers then conduct a full "visual inspection" of the youth's naked

18   body. He turns his back to them and squats to prove there is no contraband in his anus.

19   5.15    The youth then turns to face the officers with his arms out. The officers then

20   demand that he lift his scrotum for visual inspection.

21   5.16    During the strip search, Officer Swenson asked Michael to remove and hand

22   over his undergarments to be searched. Michael verbally refused.

23   5.17    When Michael refused to hand over his underwear, DCYF staff immediately

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838; (206) 382-3386 (fax)

cuffed his hands behind his back with metal handcuffs and locked him in a solitary cell.

5.18    Officer Michael Smith, supervisor to Officers Harper and Swenson, approved this restraint and isolation.

5.19    A solitary cell at Green Hill School, like those in other DCYF facilities, is about 6 feet by 8 feet and contains a concrete slab attached to one wall that functions as a bed. The cell also contains a sink and a toilet.

5.20    All four walls are concrete. The concrete bed contains no mattress, blanket, pillow, or other bedding and takes up much of the available space.

5.21    Defendants Officer Harper, Officer Swenson, and their supervisor, Officer Michael Smith, all separately reported that they informed Michael that the handcuffs would not be removed until he complied with the strip search and handed over his underwear.

5.22    Michael's refusal to comply was verbal. He did not pose any physical threat to himself, the security staff conducting the search, or any other person or property.

5.23    Multiple separate incident reports submitted by staff state that with the exception of refusing to strip naked in front of two officers, Michael was completely cooperative with all staff demands and never became physically resistant in any way.

5.24    Within a few hours of being placed in isolation in metal restraints, Michael's arms hurt from resistance against the metal handcuffs keeping his hands behind his back.

5.25    On this occasion, Defendants held Michael in handcuffs in a solitary cell for five and a half hours.

5.26    In October of 2019 again at Green Hill School, Defendant Officer Oswaldo Rosero once again demanded that Michael submit to a strip-search.

5.27    Defendant Rosero notified the supervisor on duty that he would be conducting a

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838; (206) 382-3386 (fax)

strip search, and his supervisor approved the search.

5.28    In the course of the strip search, Defendant Rosero asked Michael to remove his undergarments and hand them over to be searched. Michael verbally refused.

5.29    Defendant Rosero immediately handcuffed Michael and locked him in a solitary cell, without providing him a blanket, pillow, or bedding.

5.30    After 30 minutes of sitting in the solitary cell with his hands restrained behind his back, Michael's hands began to swell and feel painful from the tightness of the handcuffs.

5.31    When Michael asked staff to remove the handcuffs, they informed him that they would be removed when he was ready to comply with the strip search.

5.32    Staff refused to remove the handcuffs when Michael asked to use the toilet.

5.33    After staff refused his repeated requests to use the toilet, Michael had to contort his body to try to get his hands in front of him. He did this by painfully maneuvering his bound hands around his legs one at a time.

5.34    He was under direct visual observation by staff the entire time. The staff person on duty did not react.

5.35    Several hours after being restrained, Michael began to experience auditory hallucinations and thought he saw the walls of the cell changing color. His hands continued to swell painfully.

5.36    On this occasion, Defendants held Michael in handcuffs for twelve hours.

5.37    During this time, he received no food, water, or bedding for the concrete cot.

5.38    The next morning, staff removed the handcuffs. DCYF documents verify that Michael had been restrained between 5:00 and 6:00 pm the night before.

5.39    When staff removed the handcuffs, they informed Michael that in accordance

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838; (206) 382-3386 (fax)

1   with policy, they could not keep him restrained for more than twelve hours.

2      5.40     After removing the handcuffs, staff brought Michael his first meal since being

3   restrained and isolated more than twelve hours before.

4      5.41     Michael was released from isolation only when he eventually consented to

5   comply with a strip search. The search revealed that there was no contraband on his person.

6      5.42     Michael's wrists were bruised from the restraints for days afterward.

7      5.43     DCYF staff and supervisors, including Green Hill School Superintendent

8   Jennifer Redman, engaged in, condoned, and approved handcuffing Michael in isolation for

9   hours to coerce his compliance with strip searches.

10      5.44     In fact, after Michael formally grieved his treatment at the hands of staff,

11   Superintendent Redman met with Michael and told him that there was no relief available to him

12   because staff had acted in accordance with policy.

13      5.45     Because DCYF staff, up to the highest levels of administration and supervision,

14   condone handcuffing youth in isolation, all youth held in DCYF facilities are at significant risk

15   of illegal use of restraints and isolation.

16   *Facts Relating To Plaintiff Ron Ackerson*

17      5.46     On at least three occasions in late 2018, Plaintiff Ron Ackerson was handcuffed

18   and held in isolation for verbally refusing to comply with a strip search.

19      5.47     In or around September of 2018 at Green Hill School, security staff strip

20   searched Ron Ackerson under suspicion of possessing contraband.

21      5.48     The entire wing where Ron resided was similarly searched.

22      5.49     Staff regularly strip searched an entire wing at a time when one person who

23   resided there was suspected of possessing contraband, handcuffing and isolating every youth

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838; (206) 382-3386 (fax)

who verbally refused to comply. Youth were searched regardless of whether staff had any grounds to suspect that they also possessed contraband.

5.50    When an entire wing was searched in this manner, youth who stated that they did not want to be searched, or who questioned the reason for the search, was restrained in metal handcuffs and placed in isolation.

5.51    Ron and his roommate both verbally refused to comply with the strip search. Security staff immediately handcuffed both of them with metal handcuffs and placed them in separate solitary cells.

5.52    Potentially every youth subject to sudden searches of an entire wing is at risk of illegal restraint and isolation if they verbally refuse to comply.

5.53    At no point did Ron pose a physical threat to himself or others.

5.54    Staff would not allow Ron to stand up while in restraints; he was forced to sit on the concrete bench.

5.55    After leaving Ron in handcuffs for a considerable period of time, staff returned and spoke to Ron through the slot on the door of his solitary cell. They removed the handcuffs only after Ron agreed to submit to a strip search.

5.56    Ron's wrists and shoulders were in pain from being held behind his back against the tension of the handcuffs for so long.

5.57    When handcuffing youth to coerce them into compliance with a strip search, some staff members would tighten the handcuffs on purpose, telling the youth that they would see "how long you're going to last," knowing that the pain would make the youth agree to be stripped faster.

5.58.    On multiple other occasions in 2018, Ron was handcuffed and held in isolation

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838; (206) 382-3386 (fax)

for verbally refusing to comply with staff directives.

5.59    DCYF staff and supervisors, including upon information and belief Superintendent Redman, engaged in, condoned, and approved handcuffing Ron in isolation to coerce his compliance with strip searches.

5.60    Because DCYF staff condoned handcuffing youth in isolation, all youth held in DCYF facilities are at significant risk of illegal use of restraints and isolation.

**Facts Relating To Plaintiff Damien Rivera**

5.61    Plaintiff Damien Rivera was handcuffed and held in isolation for hours for verbal refusal to comply with a strip search on at least four occasions in 2019.

5.62    On the first occasion, Damien refused the strip search because of how uncomfortable he felt having to be naked in front of security staff.

5.63    Immediately upon his verbal refusal to comply, security staff restrained his hands behind his back with metal handcuffs and placed him in a solitary cell, telling him that he could either comply with the search or remain in handcuffs.

5.64    Staff kept Damien cuffed painfully behind his back for many hours.

5.65    Damien requested permission to use the bathroom, but staff told him he was not allowed to. He was unable to use the bathroom until the handcuffs were removed hours later.

5.66    At no point did Damien pose a physical threat to himself or others.

5.67    In late 2019, security staff again demanded that Damien submit to a strip search.

5.68    When Damien verbally refused to comply with the strip search, staff immediately handcuffed him and placed him in a solitary cell.

5.69    Because he had been confined soon before dinner time, Damien was hungry. Staff did not permit him to eat while he was handcuffed.

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA 98104
(206) 464-0838; (206) 382-3386 (fax)

1    5.70   Damien requested that his hands be cuffed in front of him instead of behind him,

2    which would have allowed him to eat. Staff refused this request, left his hands cuffed behind him

3    and so didn't allow him to eat.

4    5.71   Knowing that he had missed dinner and was hungry, staff ate in front of Damien

5    to taunt him into complying with the strip search.

6    5.72   Knowing that he had missed dinner and was hungry, staff taunted Damien by

7    promising him extra food if he would comply with the strip search.

8    5.73   When Damien asked staff if they were allowed to hold him in handcuffs and

9    refuse him food, staff members replied that they were acting within their rights.

10   5.74   On this occasion, staff again kept Damien in handcuffs for many hours, and held

11   him in solitary confinement for at least four days.

12   5.75   While Damien was being held in isolation, the Program Manager of his unit

13   visited the solitary cell, told him he was being "stubborn," and told staff to stop allowing him

14   books to pass the time. After the books were taken away, Damien had nothing to do.

15   5.76   The monotony of isolation, without a regular hour's break or even freedom to

16   take a shower, made Damien feel claustrophobic and anxious.

17   5.77   Damien is diagnosed with ADHD, which exacerbates the psychological harm of

18   long-term isolation. Total isolation with no routine, social contact, or anything to occupy his

19   mind left him agitated, angry, and deeply depressed.

20   5.78   On at least three other occasions in 2019, Damien was held in handcuffs for

21   hours at a time, and then in solitary confinement days at a time, for verbal refusal to comply

22   with a strip search.

23   5.79   DCYF staff and supervisors, including upon information and belief

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838; (206) 382-3386 (fax)

Superintendent Redman, engaged in, condoned, and approved handcuffing Damien in isolation for hours to coerce his compliance with strip searches.

5.80    Because DCYF staff, up to the highest levels of administration and supervision, condone handcuffing youth in isolation, all youth held in DCYF facilities are at significant risk of illegal use of restraints and isolation.

5.81    All youth at risk of illegal restraint and isolation by DCYF are equally at risk of physical and psychological harm, which are harmful to all youth but may be further exacerbated by previous trauma or diagnosed conditions.

***Facts Relating To DCYF Restraining And Isolating Youth In Violation Of Its Own Policies***

5.82    Juvenile Rehabilitation Policy 5.10, *Using Physical Restraints*, states that "mechanical restraint must not be used for the purpose of coercion, punishment, retaliation, or as a means of degradation."

5.83    JR Policy 5.10 allows the use of mechanical restraints only as long as necessary to ensure a youth is no longer a danger to themself or others.

5.84    JR Policy 5.10 requires that when a youth is in mechanical restraints after being placed in an isolation room, the restraints must be removed as soon as "the restraints can be removed without the risk of harm."

5.85    JR Policy 5.10 requires that the Superintendent or other assigned designee determine further action if the use of mechanical restraints in isolation continues beyond 20 minutes.

5.86    Nonetheless, as a matter of practice and/or unwritten policy, DCYF staff restrain youth with metal handcuffs and isolate them in solitary cells in order to force compliance and to punish noncompliance with staff directives.

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA 98104
(206) 464-0838; (206) 382-3386 (fax)

5.87    At no point in refusing to comply with staff directives were the Plaintiffs a danger to themselves or others.

5.88    At no point in restraint in isolation did the Plaintiffs pose a risk of harm to themselves or staff.

5.89    DCYF staff handcuffed the Plaintiffs for hours at a time, telling them repeatedly that the restraints would be removed only when they complied with staff directives.

5.90    The Plaintiffs were handcuffed in order to coerce their compliance and punish their noncompliance. It was profoundly degrading to the Plaintiffs to refuse them freedom of movement, food, water, bedding, and the ability to take care of bodily functions; to taunt them with food while they were restrained; and to tighten restraints to the point of pain to force faster compliance.

5.91    Juvenile Rehabilitation Policy 5.50, *Managing Room Confinement and Isolation*, states that "isolation must not be used as punishment."

5.92    JR Policy 5.50 states that "isolation must only be used to contain an emergent risk of harm to self or others."

5.93    JR Policy 5.50 requires that youth only be isolated for as long as it takes them to regain "emotional and behavioral control."

5.94    At no point before or during time in the solitary cell did the Plaintiffs pose any physical risk of harm to themselves or others.

5.95    At no point before or during time in the solitary cell did the Plaintiffs lose emotional or behavioral control.

5.96    DCYF staff isolated the Plaintiffs as punishment for noncompliance, not because of any safety or behavioral risk.

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838; (206) 382-3386 (fax)

***Facts Relating To Supervisory Liability***

5.97    DCYF staff and supervisors who have been named as Defendants in this action engaged in, condoned, and/or approved handcuffing youth in isolation for hours to coerce their compliance with strip searches.

5.98    DCYF staff and supervisors who have been named as Defendants did not follow DCYF policies when they restrained and isolated the plaintiffs or approved of or condoned these actions. These Defendants have not followed applicable DCYF policies in many other circumstances.

5.99    DCYF staff and supervisors who have been named as Defendants have been aware that DCYF staff do not follow these policies and yet they have taken no action to discipline staff or ensure that these policies are followed.

5.100    DCYF staff and supervisors who have been named as Defendants in this action were informed of these illegal acts and either approved of this on-going, illegal use of metal restraints and isolation or have taken no action to ensure that DCYF staff comply with their legal obligations.

5.101    The Defendants who are DCYF supervisors and administrators are and have been aware of the practices described in this complaint and have not taken action to ensure that the events described in this complaint do not reoccur.

5.102    On September 10, 2020 counsel for Plaintiffs provided Defendants Ross Hunter and Jennifer Redman with the letter attached to this Complaint as Exhibit 1.

5.103    Counsel in that letter notified the Defendants regarding relevant facts contained herein.

5.104    Defendants have been notified of facts contained in this complaint in other ways

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838; (206) 382-3386 (fax)

as well, including through complaints made and grievances submitted by youth in DCYF care.

5.105   Nonetheless, on information and belief, none of the supervisory Defendants has taken action to address the facts alleged in this complaint after becoming aware of the facts alleged in this complaint.

5.106   None has disciplined or admonished any DCYF staff member or administrator related to any of the events described in this complaint.

5.107   None has changed the manner in which DCYF staff at Green Hill or in the other DCYF facilities are trained or supervised related to the facts set forth in this complaint after becoming aware of them.

5.108   None has issued any new policy or guidance to DCYF staff related to the facts set forth in this complaint after becoming aware of them.

***Facts Relating To Claim Of Outrage, Punitive Damages And Plaintiffs' Injuries***

5.109   The Defendants intentionally or recklessly caused the Plaintiffs severe emotional distress.

5.110   The Defendants' conduct as described herein is extreme and outrageous.

5.111   That conduct is so extreme in degree and outrageous in character as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

5.112   The Defendants' conduct was driven by evil motive or intent, or involved a reckless or callous indifference to the Plaintiffs' legal rights.

5.113   The Defendants' conduct described herein has caused the Plaintiffs severe physical, emotional and psychological injuries.

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838; (206) 382-3386 (fax)

***Facts Relating To Class Allegations***

5.114   Upon information and belief, other youth and children under 18 have been held in metal restraints in isolation under similar circumstances and will be held in the future under similar circumstances without Court intervention.

5.115   Upon information and belief, all youth held in DCYF facilities remain at risk of being held in metal restraints in isolation under similar circumstances because they may face such treatment in other DCYF facilities or because they may be transferred to DCYF facilities where such treatment occurs.

5.116   Upon information and belief, all youth held in DCYF facilities are at a substantial risk of serious harm due to DCYF's practice of restraining youth in isolation.

5.117   Upon information and belief, the named Plaintiffs' experiences being restrained in isolation in order to coerce compliance and punish noncompliance with staff directives are not unique to them, but are typical of the experiences of other youth and children under 18 held in DCYF facilities.

## VI.   CLAIMS FOR RELIEF

***Claims Arising Under The U.S. Constitution***

6.1   By isolating and restraining youth in their care in the manner described above or by ordering, authorizing or condoning those actions, Defendants have violated and continue to violate the named Plaintiffs' and proposed class members' rights under the Eighth Amendment and Fourteenth Amendment of the United States Constitution, which are actionable pursuant to 42 U.S.C. § 1983.

6.2   By failing to properly supervise and train DCYF staff and by failing to implement or enforce lawful policies and practices, Defendants have violated and continue to

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838; (206) 382-3386 (fax)

violate the named Plaintiffs' and proposed class members' rights under the Eighth Amendment and Fourteenth Amendment of the United States Constitution, which are actionable pursuant to 42 U.S.C. § 1983.

### *Claims Arising Under The Washington Constitution*

6.3    By isolating and restraining youth in their care in the manner described above or by ordering, authorizing or condoning those actions, Defendants have acted under color of state law and have violated and continue to violate the named Plaintiffs' and proposed class members' rights under Article I, sections 3 and 14 of Washington's Constitution.

6.4    By failing to properly supervise and train DCYF staff and by failing to implement or enforce lawful policies and practices, Defendants have acted under color of state law and have violated and continue to violate the named Plaintiffs' and proposed class members' rights under Article I, sections 3 and 14 of Washington's Constitution.

### *Claims Arising From Duty To Protect The Plaintiffs' Health, Welfare, And Safety*

6.5     By isolating and restraining youth in their care in the manner described above or by ordering, authorizing or condoning those actions, Defendants have violated and continue to violate their duty to protect and maintain the health, safety, and welfare of the Plaintiffs and the members of the proposed class.

6.6    By failing to properly supervise and train DCYF staff and by failing to implement or enforce lawful policies and practices, Defendants have violated and continue to violate their duty to protect and maintain the health, safety, and welfare of the Plaintiffs and the members of the proposed class.

### *Claim For Outrage*

6.7    By engaging in the extreme and outrageous conduct described herein, the

1    Defendants have intentionally or recklessly caused the Plaintiffs severe emotional

2    distress.

3                            **VII.    RELIEF REQUESTED**

4        The Plaintiffs respectfully request that that Court:

5        7.1    Certify this as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) as

6    detailed above.

7        7.2    Adjudge and declare that the actions, customs, conditions, policies, and practices

8    described in this Complaint violate the rights of the Plaintiffs and the Plaintiff Class they seek to

9    represent under the federal and state constitutions, and other applicable laws.

10       7.3    Preliminarily and permanently enjoin the Defendants their agents, employees,

11   and all persons acting in concert with them from subjecting the Plaintiffs and the Plaintiff Class

12   to the actions, customs, conditions, policies, and practices described in this Complaint.

13       7.4    Appoint a Special Master pursuant to Fed. R. Civ. P. 53 to oversee the

14   Defendants' compliance with any orders the Court will issue in the future and order the

15   Defendants to provide all appropriate and necessary funds to compensate the Special Master for

16   their duties.

17       7.5    Retain jurisdiction of this case until such time as Defendants have fully complied

18   with all orders of the Court, and there is reasonable assurance that Defendants will continue to

19   comply in the future with these orders.

20       7.6    Award the named Plaintiffs compensatory and punitive damages pursuant to 42

21   U.S.C § 1983 and applicable state laws.

22       7.7    Award Plaintiffs and the Plaintiff Class their reasonable attorneys' fees and costs

23   pursuant to 42 U.S.C. § 1988 and any other applicable statute or court rule.

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838; (206) 382-3386 (fax)

1    7.8    Award Plaintiff and the Plaintiff Class such other and further relief as justice

2 may require.

3    Respectfully submitted this 6th day of April, 2021.

4
                                COLUMBIA LEGAL SERVICES
5
                                s/ Sarah R. Nagy
6                               SARAH R. NAGY, WSBA #52806
                                NICHOLAS B. STRALEY, WSBA #25963
7                               BONNIE A. LINVILLE, WSBA #49361
                                101 Yesler Way, Suite 300
8                               Seattle, WA 98104
                                Telephone: (206) 464-0838
9                               *Attorneys for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23