UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL ROGERS, *et al.*,

              Plaintiffs,

   v.

DEPARTMENT OF CHILDREN, YOUTH AND FAMILIES, *et al.*,

              Defendants.

Case No. C21-5248-RAJ-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This is a 42 U.S.C. § 1983 civil rights class action. This matter is before the Court on: (1) Plaintiffs Michael Rogers, Ronald Ackerson, and Damien Rivera's ("Plaintiffs") Motion to Expedite Discovery and Entry of a Scheduling Order ("Plaintiffs' Motion") (Pls.' Mot. (Dkt. # 13)); and (2) Defendants' Motion to Dismiss ("Defendants' Motion") (Defs.' Mot. (Dkt. # 32)). Plaintiffs generally allege that the Washington State Department of Children, Youth, and Families ("DCYF"), and several of its officials and staff, are actively engaged in a widespread practice of handcuffing and holding youths in solitary cells to unlawfully punish or coerce compliance with DCYF staff. (Pls.' Compl. (Dkt. # 1) at 1.) Neither party requested oral argument.

REPORT AND RECOMMENDATION - 1

Having considered the parties' submissions, the governing law, and the balance of the record, the Court recommends that: (1) Plaintiffs' Motion (dkt. # 13) be DENIED; and (2) that Defendants' Motion (dkt. # 32) be GRANTED in part and DENIED in part, as further explained below.

## II.   BACKGROUND

### A.   Factual Background

Per Plaintiffs' complaint, the DCYF incarcerates children and young adults through its Juvenile Rehabilitation Division, which operates three secure residential facilities and eight community facilities. (Pls.' Compl. at ¶¶ 5.1-2.) Plaintiffs allege that youths are regularly transferred between the secure residential facilities and eight community facilities that DCYF currently operates. (*Id.* at ¶ 5.7.) Pertinent to the instant matter, Plaintiffs are all current or former residents of the Green Hill School ("GHS"), located in Chehalis, Washington, which operates as a medium/maximum DCYF security facility for male youths. (*Id.* at ¶¶ 2.1-2.3, 5.3.) Mr. Rogers and Mr. Rivera no longer reside at GHS; however, Mr. Ackerson remains housed at GHS. (S*ee* Redman Decl. (Dkt. # 27) at ¶¶ 4-5.)

### i.   Mr. Rogers

In September 2019, Mr. Rogers alleges that DCYF Officers Anthony Harper and Benny Swenson strip searched him for contraband while he was housed at GHS. (Pls.' Compl. at ¶ 5.10.) During the strip search, Mr. Rogers alleges that Officer Swenson asked him to remove his undergarments to be searched, and that after he verbally refused, DCYF security staff immediately cuffed his hands behind his back and placed him in a solitary cell. (*Id.* at

¶¶ 5.16-5.17, 5.22.) During this instance, Mr. Rogers alleges he was placed handcuffed in a solitary cell for five and a half hours. (*Id.* at ¶ 5.25.)

In October 2019, Mr. Rogers alleges he was again asked to submit to a strip search by DCYF Officer Oswaldo Rosero at GHS. (Pls.' Compl. at ¶ 5.26.) Mr. Rogers verbally refused to consent to the search. (*Id.* at ¶ 5.28.) Mr. Rogers alleges that Officer Rosero then handcuffed his hands behind his back and locked him in a solitary cell without bedding. (*Id.* at ¶ 5.29.) After 30 minutes, Mr. Rogers asked to have the handcuffs removed but was informed they would not be until he consented to a strip search. (*Id.* at ¶¶ 5.30-5.31.) Mr. Rogers alleges that he was subsequently held for 12 hours in solitary confinement with his hands cuffed, that he received no food, water, or bedding, and that he experienced auditory and visual hallucinations due to painful swelling in his hands. (*Id.* at ¶¶ 5.35-5.37.)

Mr. Rogers was released from the solitary cell after he eventually consented to a strip search, which revealed that he was not in possession of contraband. (Pls.' Compl. at ¶ 5.41.) Mr. Rogers alleges that he formally grieved this incident but was told by GHS Superintendent Jennifer Redman there was no relief available to him because DCYF staff acted in accordance with DCYF policy. (*Id.* at ¶ 5.44.)

    ii. Mr. Ackerson

Mr. Ackerson alleges that, on at least three occasions in late 2018, he was handcuffed and held in isolation for verbally refusing to comply with a strip search at GHS. (Pls.' Compl. at ¶¶ 5.46, 5.58.) In one such instance, on or around September 2018, Mr. Ackerson alleges DCYF security staff at GHS strip searched an entire wing where he resided under suspicion of an individual possessing contraband. (*Id.* at ¶ 5.47.) Mr. Ackerson and his roommate both verbally refused to comply with the strip search. (*Id.* at ¶ 5.51.) Mr. Ackerson alleges that DCYF security

REPORT AND RECOMMENDATION - 3

staff immediately handcuffed both him and his roommate and placed them in separate solitary cells. (*Id.*) Mr. Ackerson alleges that DCYF security staff would not allow him to stand up while he was placed in restraints and that he was forced to sit on a concrete bench in the cell. (*Id.* at ¶ 5.54.) Mr. Ackerson alleges that DCYF security staff eventually removed the handcuffs after he agreed to submit to a strip search. (*Id.* at ¶ 5.55.)

        *iii.*    Mr. Rivera

Mr. Rivera alleges that he was handcuffed and held in isolation for hours for verbal refusal to comply with a strip search on several occasions in 2019. (Pls.' Compl. at ¶¶ 5.61, 5.78.) In the first instance, Mr. Rivera alleges that he refused the strip search because he was uncomfortable being naked in front of DCYF security staff. (*Id.* at ¶ 5.62.) Immediately upon his verbal refusal to comply, Mr. Rivera alleges that DCYF security staff handcuffed his hands and placed him in a solitary cell. (*Id.* at ¶ 5.63.) Mr. Rivera alleges that he requested permission to use the bathroom but was not allowed to until the handcuffs were removed hours later. (*Id.* at ¶ 5.65.)

In late 2019, security staff again demanded Mr. Rivera submit to a strip search. (Pls.' Compl. at ¶ 5.67.) Mr. Rivera alleges that when he verbally refused to comply with the strip search, DCYF security staff handcuffed him and placed him in a solitary cell. (*Id.* at ¶ 5.68.) During this instance, Mr. Rivera alleges that he requested his hands be cuffed in front of him instead of behind him, which would have allowed him to eat, but DCYF security staff refused this request. (*Id.* at ¶¶ 5.69-5.70.) Mr. Rivera alleges that DCYF security staff later ate in front of him to taunt him into complying with a strip search. (*Id.* at ¶ 5.72.) On this occasion, Mr. Rivera also alleges DCYF security staff kept him in handcuffs for "many hours" and held him in solitary confinement for at least four days. (*Id.* at ¶ 5.74.) Mr. Rivera further alleges that on at least three

REPORT AND RECOMMENDATION - 4

other occasions in 2019, he was held in handcuffs and solitary confinement for days at a time due to his verbal refusal to comply with a strip search. (*Id.* at ¶ 5.78.)

### B.   Procedural History

On April 6, 2021, Plaintiffs filed a class-action complaint against Defendants: (1) DCYF; (2) DCYF Secretary Ross Hunter; (3) DCYF Deputy Secretary Jody Baker; (3) Interim DCYF Secretary Rebecca Kelly; (4) DCYF Assistant Secretary Marybeth Queral; (5) DCYF Director Harvey Perez; (6) GHS Superintendent Jennifer Redman; (7) GHS Officer Benny Swenson; (8) GHS Officer Anthony Harper; (9) GHS Officer William Dollarhyde; (10) GHS Officer Oswaldo Rosero; (11) GHS Officer Michael Smith; and (12) Jane and John Does 1-25. (*See* Pls.' Compl. at ¶¶ 2.5-2.18.) Plaintiffs assert that all Defendants are named in their personal, individual, and official capacities, except for DCYF Secretary Hunter who is named only in his official capacity. (*Id.* at ¶¶ 2.19-2.20.) Plaintiffs' complaint alleges that the events involving Mr. Rogers, Mr. Ackerson, and Mr. Rivera in 2018 and 2019 are contrary to DCYF policy, and give rise to claims under 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments to the United States Constitution and under Article I, sections 3 and 14 of the Washington Constitution. (*Id.* at ¶¶ 1.10, 6.1-6.7.) Plaintiffs request compensatory and punitive damages, declaratory and injunctive relief against all Defendants, and appointment of a special master to oversee Defendants' compliance with any of the Court's orders. (*Id.* at ¶¶ 1.11-1.12, 7.1-7.8.)

On April 29, 2021, Plaintiffs filed their Motion, alleging that the events submitted in their complaint are ongoing at DCYF Juvenile Rehabilitation Division facilities, including GHS, and require expedited discovery. (Pls.' Mot.) On May 10, 2021, Defendants filed a response to Plaintiffs' Motion, and on May 14, 2021, Plaintiffs filed a reply. (Defs.' Resp. (Dkt. # 26); Pls.' Reply (Dkt. # 30).)

REPORT AND RECOMMENDATION - 5

On May 14, 2021, Defendants filed their Motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Defs.' Mot.) On May 17, 2021, this Court re-noted both Plaintiffs' Motion and Defendants' Motion to be heard concurrently on June 11, 2021, based on Defendants' contention that expedited discovery would prejudice them due to their Eleventh Amendment sovereign immunity and qualified immunity defenses (*see* dkt. # 26 at 1, 4-7). (Order (Dkt. # 34).) On June 1, 2021, Defendants filed their Answer. (Answer (Dkt. # 36).)

On June 7, 2021, Plaintiffs filed their Response to Defendants' Motion. (Pls.' Resp. (Dkt. # 38).) On June 11, 2021, Defendants filed their Reply. (Defs.' Reply (Dkt. # 41).) The parties jointly filed a status report on June 28, 2021. (Dkt. # 44).)

### III. DISCUSSION

#### A. Motion to Dismiss

Pursuant to Rule 12(b)(1), Defendants move for dismissal of: (1) all claims against DCYF; (2) all state and federal law claims against individually named Defendants in their official capacities; (3) all state and federal law claims for declaratory and injunctive relief; and (4) all claims based on state law. (Defs. Mot. at 1.) Defendants further move for dismissal, under Rule 12(b)(6), of all claims under 42 U.S.C. § 1983 seeking damages against individually named Defendants in their official capacities. (*Id.* at 1.)

Plaintiffs' Response acknowledges that the Eleventh Amendment bars their ability to file suit for damages against both DCYF and its agents in their official capacities, and therefore, Plaintiffs concede their claims against DCYF and damages claims against individually named Defendants in their official capacities should be dismissed. (*See* Pls.' Resp. at 7-8; Defs.' Reply at 2.) In addition, Plaintiffs agree to dismiss all state claims for injunctive relief against the remaining Defendants. (*See* Pls.' Resp. at 4 n.1.) However, Plaintiffs maintain that: (1) their

REPORT AND RECOMMENDATION - 6

federal law claims for injunctive relief raised against individually named Defendants in their official capacity; and (2) their state law claims for damages raised against individually named Defendants in their personal capacities, should not be dismissed. (Pls.' Resp. at 1-2.) In their Reply, Defendants concede Plaintiffs' claims for damages against individually named Defendants in their personal capacities may proceed and withdraw this portion of their Motion. (Defs.' Reply at 2 n.1, 8-9.) Nevertheless, Defendants argue that Plaintiffs fail to allege an ongoing violation of federal law sufficient to seek federal injunctive relief, and that Mr. Rogers and Mr. Rivera lack standing. (*Id.* at 2-8.)

Therefore, based on the parties' concessions at this juncture, the Court recommends dismissal of: (1) DCYF from this action; (2) Plaintiffs' claims for damages under state and federal law raised against individually named Defendants in their official capacities; and (3) Plaintiffs' state law claims for injunctive relief. The Court will examine Defendants' remaining arguments for dismissal of Plaintiffs' federal law claims for injunctive relief below:

         *i.*      *Legal Standard*

A complaint must be dismissed under Rule 12(b)(1) if, "considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute." *Baker v. Carr*, 369 U.S. 186, 198 (1962); *see D.G. Rung Indus., Inc. v. Tinnerman*, 626 F.Supp. 1062, 1063 (W.D. Wash. 1986). A federal court is presumed to lack subject matter jurisdiction until the plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d

1221, 1225 (9th Cir. 1989). Therefore, the plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Stock West*, 873 F.2d at 1225.

        ii.       *Injunctive Relief*

Defendants argue that Plaintiffs' federal claims for injunctive relief against DCYF staff in their official capacity should be dismissed because Plaintiffs fail to allege an ongoing violation of federal law, which Defendants argue is necessary to pierce Eleventh Amendment immunity under *Ex parte Young*, 209 U.S. 123 (1908). (Defs.' Mot. at 12-14; Defs' Reply at 2-8.) They further argue that Mr. Rogers and Mr. Rivera lack standing to request prospective injunctive relief. (*Id*.) Plaintiffs argue that an ongoing violation is properly alleged because Plaintiffs' allegations establish a pattern that every individual in DCYF custody is at continued risk of the alleged unlawful restraint practices. (Pls.' Resp. at 4-6.) Plaintiffs also maintain Mr. Rogers and Mr. Rivera have standing to represent Plaintiffs' proposed class. (*Id.* at 7.)

Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment bars an individual from suing a state in federal court without the state's consent. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54-55 (1996); *see Nat. Res. Def. Council v. California Dep't of Transp.*, 96 F.3d 420, 421 (9th Cir. 1996). Therefore, when a state is named as the defendant in an action, "[i]t is clear, absent consent, that the action is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). There is no evidence in the record that the State of Washington has waived its Eleventh Amendment immunity from suit in federal courts. *See Whiteside v. State of Washington*, 534 F.Supp.774, 778 (E.D. Wash. 1982).

REPORT AND RECOMMENDATION - 8

The *Ex parte Young* doctrine serves as an exception to Eleventh Amendment immunity. *Green v. Mansour*, 474 U.S. 64, 68 (1985). Generally, a suit against a state official in his or her official capacity is no different from a suit against the state itself, and therefore, state officials acting in their official capacity are not "persons" under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *see Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). However, under *Ex parte Young*, a state official in his or her official capacity is considered a "person" for § 1983 purposes and the Eleventh Amendment does not prevent a federal court from granting a claim for prospective injunctive relief to prevent a continuing violation of federal law. *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002); *Green*, 474 U.S. at 68; *see also Doe*, 131 F.3d at 839. In determining whether *Ex parte Young* doctrine provides an exception to an Eleventh Amendment bar to suit, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc.*, 535 U.S. at 645 (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

Here, the Court finds Plaintiffs have failed to allege an ongoing violation of their federal rights. In regard to all named Plaintiffs, the most recent allegation of a violation involving Defendants occurred in 2019. (*See* Pls.' Compl. at ¶¶ 5.10, 5.26, 5.61, 5.78.) Mr. Rivera was released from DCYF custody to the Lewis County Jail on April 7, 2021, and Mr. Rogers was transferred from GHS to the Woodinville Community Facility, a separate DCYF community facility, on April 15, 2021.[1] (*See* Redman Decl. at ¶¶ 4-5.) Though Mr. Ackerson remains

---

[1] Though Mr. Rogers still resides in a DCYF facility, the Court notes Plaintiffs' complaint fails to specifically allege that Defendants' restraint practices occurred at any other DCYF facilities outside of GHS. (*See generally* Pls.' Compl.) Plaintiffs argue Mr. Rogers may be transferred back to GHS at a future date. (Pls.' Resp. at 7.) But based on the current record before the Court, the likelihood that Mr. Rogers will be returned to GHS, for the purposes of finding an ongoing violation of federal law, remains speculative.

REPORT AND RECOMMENDATION - 9

housed at GHS, his allegations solely concern incidents that occurred in 2018. (*See* Pls.' Compl. at ¶¶ 5.46-5.55.) Therefore, the Court finds Plaintiffs have failed to allege they are currently subject to an ongoing violation of federal law and, thus, this Court cannot provide Plaintiffs with an injunctive remedy against individually named Defendants in their official capacity. *See Verizon Md. Inc.*, 535 U.S. at 645; *see also Slater v. Clarke*, 2013 WL 3936877, at *4-5 (W.D. Wash. July 30, 2013) (finding the *Ex parte Young* exception to Eleventh Amendment sovereign immunity does not apply where "plaintiffs do not allege an ongoing violation of constitutional rights that the injunctive relief they seek would serve to correct.").

Despite Plaintiffs' contention that putative class members continue to face an ongoing violation of their federal rights, the Court notes putative class members are not presently before the Court in the absence of a certified class. *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501 (9th Cir. 1996) ("[I]njunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification."); *see also Zepeda v. INS*, 753 F.2d 719, 728 (9th Cir. 1983). Plaintiffs' complaint also fails to identify a putative class member who has suffered any deprivation of their rights more recently than 2019. (*See generally* Pls'. Compl.) As such, Plaintiffs' claim that there is a class of plaintiffs similarly situated, and in danger of an ongoing violation of their federal rights, remains speculative.

Accordingly, the Court finds Plaintiffs' claim for injunctive relief against individually named Defendants in their official capacity should be dismissed.

                iii.    *Leave to Amend*

Plaintiff's request leave to amend to correct the deficiencies in their complaint. (Pls.' Resp. at 4 n.1.) Defendants argue that leave to amend should not be granted because the Eleventh Amendment bars Plaintiffs' federal law claims for injunctive relief against DCYF staff in their

REPORT AND RECOMMENDATION - 10

official capacity and Plaintiffs failed to allege any incident occurring more recently than 2019. (Defs.' Reply at 9.)

Pursuant to Rule 15(a)(2), the court should "freely give" leave to amend "when justice so requires." Five factors are to be considered: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the party has previously amended its pleading. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (citing *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)). The burden is on the party opposing amendment to show that amendment is not warranted. *Wizards of the Coast, LLC v. Cryptozoic Entm't, LLC*, 309 F.R.D. 645, 649 (W.D. Wash. 2015).

Here, the Court does not find that granting Plaintiffs leave to amend would be futile. Despite the effect of the Eleventh Amendment on Plaintiffs' claims, the Court finds Plaintiffs may be able to allege new facts to conform with the requirements of *Ex parte Young*. See *Arizona Students' Ass'n. v. Arizona Bd. of Regents*, 824 F.3d 858, 865-66 (9th Cir. 2016) ("Had the district court allowed [Plaintiff] to amend its complaint to conform to the *Young* doctrine . . . sovereign immunity would not have barred [Plaintiff's] suit."). Furthermore, the Court notes that Plaintiffs have not previously amended their complaint and that there is no evidence in the record of bad faith, undue delay, or prejudice. Therefore, the Court recommends that Plaintiffs be granted leave to amend their federal law claims for injunctive relief against individually named Defendants in their official capacity.

      **B.**    **Motion to Expedite Discovery**

Next, Plaintiffs argue that expedited discovery and entry of a scheduling order are appropriate in this matter because of Plaintiffs' alleged ongoing restraint measures at DCYF

facilities.[2] (Pls.' Mot. at 1.) Specifically, Plaintiffs seek expedited discovery of: (1) documents relating to how often youth are and have been restrained in isolation at DCYF facilities; (2) documents relating to what youth experience in restraint while isolated; (3) policies and procedures related to restraint, isolation, and strip searches in effect at DCYF facilities; (4) information relating to relevant DCYF staffing; (5) documents relating to actions Defendants took in response to Plaintiffs' September 10, 2020 demand letter to DCYF Secretary Hunter; and (6) at least one deposition under Fed. R. Civ. P. 30(b)(6) to address these issues. (*Id.* at 5.) Plaintiffs argue expedited discovery is warranted to support their forthcoming motions for class certification and preliminary injunctive relief enjoining DCYF from continuing its restraint practices. (*Id.* at 1-2.)

Defendants counter that Plaintiffs have failed to demonstrate good cause and that the Court first need consider its Eleventh Amendment sovereign immunity defense because it renders DCYF and individually named Defendants immune from suit.[3] (Defs.' Resp. at 1, 4-7.) In addition, Defendants argue expedited discovery is not warranted because Plaintiffs failed to exercise diligence as Plaintiffs' counsel first raised Plaintiffs' issues to DCYF almost a year after the latest alleged event (*see* Pls.' Mot., Ex. 1 (Dkt. # 13-1)), and Plaintiffs waited several months before filing the instant action. (Defs.' Resp. at 2, 7-8.) Defendants further argue that expedited

---

[2] As a preliminary matter, the Court notes that a Rule 26(f) discovery conference took place after Plaintiffs filed their Motion (dkt. # 33), and this Court entered a scheduling order on July 6, 2021 (dkt. # 45). However, Plaintiffs' Motion is not moot because Plaintiffs' Motion additionally seeks to expedite discovery deadlines.

[3] Defendants additionally request that this Court not expedite discovery before issues related to Defendants' qualified immunity from suit are settled. (Defs.' Resp. at 1, 4.) Defendants note they anticipate seeking dismissal of individually named Defendants in their personal capacity on the basis of qualified immunity at a later date. (*Id.* at 4 (citing *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (noting qualified immunity provides "immunity from suit rather than a mere defense to liability.") (internal quotations and citation omitted)); Miller Decl. (Dkt. # 29) at ¶ 3.)

REPORT AND RECOMMENDATION - 12

discovery is not necessary for Plaintiffs to pursue class certification or preliminary injunctive relief. (*Id*. at 8-10.)

The Court has broad discretionary powers to control discovery. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Courts in the Ninth Circuit have used a good cause standard to determine whether expedited discovery is appropriate. *Am. LegalNet, Inc. v. Davis*, 673 F.Supp.2d 1063, 1066-67 (C.D. Cal. 2009); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). Good cause exists "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool*, 208 F.R.D. at 276. "The good cause standard may be satisfied where a party seeks a preliminary injunction . . . ." *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003) (internal citations omitted). However, a court need not automatically grant expedited discovery "merely because a party seeks a preliminary injunction." *Am. LegalNet, Inc.*, 673 F.Supp.2d at 1066.

When considering a request for expedited discovery in preparation for a preliminary injunction request, "it makes sense to examine the discovery request . . . on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *Am. LegalNet, Inc.*, 673 F.Supp.2d at 1067 (internal citation and quotations omitted). In determining the reasonableness of a request for expedited discovery, courts generally consider: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* (internal quotations and citations omitted); *see also Veeder-Root Fuelquest, LLC v. Wisdom*, 2021 WL 1209257, at *3 (W.D. Wash. Mar. 31, 2021).

REPORT AND RECOMMENDATION - 13

1    Here, in considering the expedited discovery factors, the Court finds nothing in the record
2    evinces a need for expedited discovery in this matter. A motion for preliminary injunction is not
3    currently pending. Though Plaintiffs acknowledge they seek expedited discovery for the
4    purposes of class certification and to seek an injunction— as noted in this Court's consideration
5    of Defendants' Eleventh Amendment immunity defenses above—Plaintiffs fail to allege they are
6    subject to an ongoing violation of federal law, and therefore, do not demonstrate an urgent need
7    for expedited discovery. No allegation in Plaintiffs' complaint took place later than 2019 and
8    both Mr. Rivera and Mr. Rogers have since left GHS. (*See* Pls.' Compl. at ¶¶ 5.10, 5.26, 5.46,
9    5.58, 5.61, 5.78; Redman Decl. at ¶¶ 4-5.) Despite Plaintiffs' argument that Mr. Ackerson
10   remains at risk of being punished for any noncompliance with restraint in isolation because he
11   remains at GHS (*see* Pls.' Reply at 3), Mr. Ackerson's latest alleged violation occurred in 2018.
12   (*See* Pls.' Compl. at ¶¶ 5.46-5.55.) Accordingly, the Court declines to expedite discovery at this
13   time.

## IV.    CONCLUSION

For the forgoing reasons, the Court recommends that Plaintiffs' Motion (dkt. # 13) be DENIED, and that Defendants' Motion (dkt. # 32) be GRANTED in part and DENIED in part. Specifically, the Court recommends that: (1) DCYF be dismissed from this action; (2) Plaintiffs' state and federal law claims for damages, as raised against individually named Defendants in their official capacities, be dismissed; (3) Plaintiffs' state law claims for injunctive relief be dismissed; (4) Plaintiffs' federal law claims for injunctive relief, as raised against individually named Defendants in their official capacities, be dismissed without prejudice; and (5) Defendants' Motion be denied in all other respects. Plaintiffs are granted leave to amend their

1   federal law claim for injunctive relief, as raised against individually named Defendants in their
2   official capacities. A proposed Order accompanies this Report and Recommendation.
3         Objections to this Report and Recommendation, if any, should be filed with the Clerk and
4   served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report
5   and Recommendation is signed. Failure to file objections within the specified time may affect
6   your right to appeal. Objections should be noted for consideration on the District Judge's
7   motions calendar for the third Friday after they are filed. Responses to objections may be filed
8   within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter
9   will be ready for consideration by the District Judge on **August 13, 2021**.
10        The Clerk is directed to send copies of this Report and Recommendation to the parties
11  and to the Honorable Richard A. Jones.

13        Dated this 22nd day of July, 2021.

                                            MICHELLE L. PETERSON
                                            United States Magistrate Judge

REPORT AND RECOMMENDATION - 15